381 So.2d 158 (1980)
George B. COWAN et al.
v.
GULF CITY FISHERIES, INC., et al.
No. 51579.
Supreme Court of Mississippi.
March 5, 1980.
Rehearing Denied April 2, 1980.
*159 Karl Wiesenburg, William T. Reed, Pascagoula, for appellants.
Frank J. Hammond, Jr., Moss Point, Charles W. Ford, Melvin L. Mitchell, Pascagoula, for appellees.
Before ROBERTSON, P.J., and LEE and BOWLING, JJ.
ROBERTSON, Presiding Justice, for the Court:
The Pascagoula City Council, on application of Gulf City Fisheries, Inc., and/or Graham Boats, Inc., after proper notice and hearing, passed Ordinance No. 11-1976, rezoning from residential to industrial a lot fronting 193 feet on the west side of Cedar Street and extending west for a depth of 150 feet. Protestors, George B. Cowan and Frieda S. Cowan, husband and wife, and Denise H. Wiesenburg, appealed to the Circuit Court of Jackson County. That court, by order dated September 8, 1978, "affirmed in its entirety" the action of the Pascagoula City Council. In its Order of September 8, 1978, the Court found:
"The above styled and numbered case having been fully briefed by attorneys for all parties and argued in open Court during a regular term of Court and the Court having taken the same under advisement and now having fully considered said case, is of the opinion and does now find that said appeal should be affirmed in its entirety."
George B. and Frieda S. Cowan, husband and wife, and Denise H. Wiesenburg appeal.
The four assignments of error can be briefly summarized as follows:
I. The City Council erred in rezoning the property on the basis of a mistake in the original zoning plan.
II. The appellee's application to rezone was barred under the doctrine of res judicata.

*160 III. The Circuit Court erred in setting aside its August 16, 1977, judgment, and upholding the ordinance.
IV. Ordinance No. 11-1976 constituted illegal spot zoning.
Gulf City Fisheries and/or Graham Boats, Inc. purchased an option to buy the Tapper property, a parcel of land approximately 736 feet long from east to west, and 193 feet wide from north to south. This parcel extends west from the western boundary of Cedar Street to the Pascagoula River. All, except the eastern 150 feet of this parcel, was zoned "Industrial" many years ago, and the Tappers have been and are now using their property as a boat marina and a bait shop. In the past, they also operated a restaurant on their property. South of the Tapper property is Gulf City Fisheries' processing plant and Graham Boats' shipbuilding and repair yards.
The parcel rezoned is the east 150 feet of the 736-foot tract, the other 586 feet having been zoned "industrial" and so used for many years. This small portion of the larger tract is bounded by Cedar Street on the east, by industrially zoned and used property of the appellee on the west, by a makeshift gravel road on the north, by industrially zoned and used property on the northwest, by industrially zoned and used property of the appellee on the southwest, and by a vacant lot of the appellee on the south. The colored photos introduced into evidence show this parcel cut by a large drainage ditch or boat slip extending diagonally from southwest to northeast up to Cedar Street, with large boats docked in this boat slip.
As to the vacant land  opposite the parcel rezoned  on the east side of Cedar Street, Charles Graham testified:
"Q. Mr. Graham across the street from the R-1-A area that you have just discussed in these photographs of the Tapper property what is the land terrain across the street, immediately from the Tapper property? What sort of land is it?
A. It's marsh. Except on the . . directly across from the north edge of it there is a small portion of the property that belongs to Mr. Cowan.
Q. Mr. Who ...?
A. George Cowan.
Q. What's the elevation above the north line of the area that you speak of Mr. Cowan's property that's in line with the Tapper property?
A. Well his property was apparently filled and the area directly across from the marina property just south of that is owned by Gulf City Fisheries for a distance of about eight hundred feet east that is East of Cedar Street and it is marsh and there is a piece there seventy-seven feet wide that is owned by Gulf City Fisheries. And the piece next south, next to that one just south is owned by C.A. Carrier and it's approximately a hundred feet front and that all faces . . it's also marsh. That's all that faces this property on the east side of Cedar Street across which the sewer line runs above the street."
Protestants Cowans' home is thus located across Cedar Street and to the northeast of the parcel rezoned.
The home of the only other protestant, Denise Wiesenburg, built in 1961, is located in a heavily wooded section on the east side of Cedar Street, some distance from the Tapper parcel. Exhibit No. 8, a colored photo, shows Cedar Street rising noticeably as it proceeds northward and in none of the many exhibits can the Denise Wiesenburg home be seen; it is insulated by distance and shielded by trees from the Tapper parcel.
Since 1964, Gulf and/or Graham Boats, Inc. has operated a seafood processing plant and boatbuilding and repair business on its property to the south of the Tapper property. Walker Shipyard is to the south of Gulf's facilities and Flechas Shipyard to the north.
The small part of the Tapper property rezoned (193 feet from north to south and 150 feet from east to west) in the case at bar is about 6 inches above mean sea level, and is diagonally divided by a large drainage ditch, or boat slip. The new comprehensive *161 zoning ordinance of the City of Pascagoula passed in 1973 provides:
"REGULATORY FLOOD PROTECTION ELEVATION: The elevation of 12.5 feet mean sea level to which uses regulated by this section are required to be elevated or flood proofed.
.....
(b) ... The lowest floor of new residential construction must, at a minimum, be elevated to the level of the regulatory flood protection elevation (12.5 feet MSL).
.....
(a) All new construction or substantial improvements of residential structures within the special flood hazard areas must have the lowest floor (including basement) elevated to or above 12.5 feet mean sea level."
The uncontradicted testimony was that a house built on the parcel rezoned would have to be built on 11-foot stilts or posts. This testimony clearly shows why no residence of any kind has ever been built on this flood-hazard lot.
Graham testified about the need to rezone so that this parcel can be included in a much needed expansion of Graham Boats, Inc. He expected to add an additional 50 employees with an anticipated payroll increase of $9,000 to $10,000 per week. Graham's plans are to continue to operate the Tapper Marina.
After extensive grading and filling, Graham Boats would use the first 65 feet of the rezoned parcel for automobile parking. The next 30 feet would be primarily for storage, with the entrance to the proposed main building back about 95 feet from Cedar Street.
On June 8, 1976, Ordinance No. 11-1976 was passed by the Pascagoula City Council by a six to one vote. That ordinance provides in part:
"WHEREAS, the City Council hereby finds and determines that the original zoning of the subject property as Residential R-1A was done by mistake and that a change in zoning classification of Residential R-1A to industrial is warranted in the public interest, convenience and necessity."
Councilman Levy, before voting for the ordinance, commented: "Can I say one thing? That property is not good for anything but commercial ... . so I will vote for that."
Before casting the lone vote against, Councilman Curry commented:
"I feel like the ordinance says that the area was zoned mistakenly, and I can't accept that. There's no doubt in my mind, in my own mind, but what the area is gravitating toward industrial, but that's not what we're voting on... . I want to express my appreciation to, I believe that Mr. Graham made possible the transcript, and I've got a better, I think all of us have a better overview of the whole spectrum than we've ever had in this whole matter, .. . but I can't see how the mistake was made in 1939 or 1946. I think it was done that way purposely and if the order had read because it narrowly conforms to useage around it that might have been something else, but that's the reason I voted that way." (Emphasis added).
The testimony, and color pictures introduced as exhibits, make it crystal clear that the remaining portion of this 736-foot tract (the 193-foot by 150-foot lot on the west side of Cedar Street) is incapable of being used for anything but industrial property, that this parcel should be rezoned and thus added to the industrially zoned and used property adjacent to and contiguous to it on the west.
It should also be kept in mind that Gulf is not trying to change the zoning of anybody else's property, but merely trying to change the zoning of a small parcel of a larger tract that it has recently purchased, so that it can be used at all.
The 3-volume, 461-page record and exhibits clearly depict the changing character of the lands on the west side of Cedar Street. The testimony and exhibits amply support the finding of the Pascagoula City Council *162 that it would be in the public interest, convenience and necessity to rezone this 193-foot by 150-foot lot from residential to industrial. Both the Pascagoula City Council, and the Circuit Court in affirming the Council's action, reached the right decision because of the change of conditions in this section of Pascagoula.
The mere fact that City Council said "that the original zoning of the subject property as Residential R-1A was done by mistake" is not fatal to the rezoning ordinance.
In Paine v. Underwood, 203 So.2d 593 (Miss. 1967), this Court said:
"It was not intended and we did not hold that the order of the zoning authority must specifically say that there has been a change of conditions. The essential thing is that there be evidence of a change of conditions. It is clear from the record now before us that the issue of whether there had been any change or changes to justify rezoning of the property was the issue that the Board determined. We are of the opinion that the finding by the Board that the change was proper and to the best interest of the county and particularly to this area, was sufficient since there was proof of change of conditions." 203 So.2d at 597.
In City of Jackson v. Ridgway, 261 So.2d 458 (Miss. 1972), we said:
"The Court has repeatedly stated that zoning is essentially a legislative function and the scope of judicial review is limited. It is not what Judges of this Court individually believe would be a proper zoning of property but whether we are justified in reversing the order of the duly constituted authorities whose function is to decide such questions. We find no justification for a reviewing court to overturn the order of the City Council." 261 So.2d at 460.
In Fowler v. City of Hattiesburg, 196 So.2d 358 (Miss. 1967), this Court quoted with approval from Ridgewood Land Company v. Simmons, 243 Miss. 236, 137 So.2d 532 (1962), as follows:
"This Court will not pass upon the wisdom or policy of a rezoning order because that is a question for the determination of the Board * * *." (Emphasis added). 243 Miss. at 248-249, 137 So.2d at 536-537.
In Fowler, the Court went on further to hold:
"On appeal to this Court from a zoning ordinance of a municipal council, or board of mayor and aldermen, the presumption is in favor of the reasonableness of the ordinance, and although this presumption must, of course, yield to facts to the contrary; still every intendment is to be made in favor of the reasonableness of the exercise of municipal police power in making regulations. Unless the ordinance is clearly invalid, the courts will not so declare." 196 So.2d at 362. (Emphasis added).
We are of the opinion that the Pascagoula City Council and the Circuit Court reached the right result for the reason that there had been a material and substantial change in the character of the use of the lands on the west side of Cedar Street and the record reflected this change of conditions. There is, therefore, no merit in the first assignment of error.

II.
This assignment of error, that the appellee's application to rezone was barred because the matter was res judicata, is without merit.
Generally four identities must be met for the doctrine of res judicata to apply: (1) Identity of the subject matter of the action, (2) Identity of the cause of action, (3) Identity of the parties to the action, and (4) Identity of the quality or character of a person against whom the claim is made. Standard Oil Company v. Howell, 360 So.2d 1200 (Miss. 1978); Murray v. Murray, 358 So.2d 723 (Miss. 1978). Furthermore, a judgment is "res judicata only to the facts and legal rights of the parties as they existed at the time the judgment was rendered." Walls v. Hammond Ford Company, 220 So.2d 347, 349 (Miss. 1969).
*163 The easternmost 150 feet of the Tapper property was not the subject of any rezoning request or litigation until the present Petition to Rezone was filed on April 23, 1976. So the four identities have not been met. Furthermore, property is always subject to rezoning when there has been a substantial change in the character of a neighborhood. McKibben v. City of Jackson, 193 So.2d 741 (Miss. 1967). The evidence, both oral and documentary, showed sufficient change in the area to justify the Pascagoula City Council in rezoning this parcel from residential to industrial, and in finding that the change "is warranted in the public interest, convenience and necessity."

III.
The third assignment of error, that the Circuit Court did not have the authority to vacate and set aside its August 16, 1977, judgment, is without merit.
On August 16, 1977, the court, without notice to the appellee, vacated and set aside ordinance No. 11-1976 of the Pascagoula City Council. By motion, filed September 1, 1977, during the same term of court, appellee asked that the judgment of August 16, 1977, be set aside and assigned sound reasons for its request. By order entered September 1, 1977, the Court took the matter under advisement and on September 8, 1978, the Court entered two separate orders: one setting aside the illegal order of August 16, 1977, and the other affirming the action of the Pascagoula City Council in passing Ordinance No. 11-1976. Inasmuch as the Court did not have authority to enter its order of August 16, 1977, and inasmuch as the Court took this matter under advisement at the same term of court, the Court had jurisdiction to later act in the matter and correct its error by setting aside the illegal and unauthorized order of August 16, 1977.

IV.
The fourth assignment of error, that Ordinance No. 11-1976 constituted spot zoning, is not well taken.
2 Yokley, Zoning Law and Practice, 4th Ed. (1978), Section 13-3, defines spot zoning in this way:
"Spot zoning amendments are those which by their terms single out a particular lot or parcel of land, usually small in relative size, and place it in an area the land use pattern of which is inconsistent with the small lot or parcel so placed, thus projecting an inharmonious land use pattern."
The parcel rezoned (193' X 150') is actually a small part of a larger parcel (736' X 193'), the larger portion having been zoned industrial and used as industrial property for many years. The parcel rezoned is surrounded by industrially zoned and used property or by vacant land good for nothing but to hold the world together. Under no stretch of the imagination could this rezoning be considered spot zoning under the definition of Yokley.
The Order of the circuit court, upholding and affirming the action of the Pascagoula City Council in rezoning this 193-foot X 150-foot parcel of land on the west side of Cedar Street from residential to industrial, is affirmed.
This case was considered by a conference of the judges en banc.
AFFIRMED.
PATTERSON, C.J., SUGG, WALKER, LEE and BOWLING, JJ., concur.
COFER, J., SMITH, P.J., and BROOM, J., dissent.
COFER, Justice, dissenting:
I am constrained to dissent.
The issue before the planning commission, the city council, and the circuit court was mistake or none in the original zoning. The proposed rezoning ordinance included in the newspaper notice of the hearing on the petition to rezone, contained language reading,

Whereas, the City Council hereby finds and determines that the original zoning of the subject property as Residential *164 R-1A was done by mistake and that a change in zoning classification of Residential R-1A to Industrial is warranted in the public interest, convenience and necessity. (Emphasis added).
Thus, the only factual question submitted to the public was the mistake in the original zoning. Acting upon this pleading, objections were made and a hearing was had. Attorneys and clients appeared and the issue remained whether a mistake was made in the original zoning.
The planning commission did not agree with the petitioners, but the city council, to which the proposed ordinance and the record went, adopted the ordinance, which granted the change in the zoning, based upon the determination that a mistake had been made in the original zoning. In the city council hearing, one of the councilmen declined to vote in favor of the ordinance because it was founded on a mistake in the original zoning.
The objectors carried the issue to the Circuit Court of Jackson County, where the action of the city council was affirmed.
The objectors then have appealed here, and the appellees' briefs are addressed to the issue of mistake or not in the original zoning  not to a change warranting the rezoning.
Only now has the issue of change since the original zoning entered the case, and the public has not had an opportunity to meet and to rebut the issue we inject here (if, indeed, there is any proof in the record that calls for rebuttal). We, as an appellate body only, have made an original finding of fact, the existence of a material change.
Thus, this Court is amending the petitioners' pleadings, briefing their case, and deciding the case upon our own pleadings and brief. This, in my opinion, ought not so to be.
Once property is zoned it may only be rezoned on sufficient allegation and proof of fact warranting the rezoning, which fact may be a mistake in the original zoning or a change in the character of the neighborhood clearly warranting the proposed change.
Board of Supervisors of Jackson County v. Roberts, 287 So.2d 436 (Miss. 1973), involved proceedings on petition for rezoning. This Court said, in part:
The judgment of the circuit court must be reversed for the reason that the record in this case does not establish, nor did the original petition to rezone allege that there had been any change in the character of the neighborhood whatsoever since the original zoning ordinance was adopted.
In order to justify the rezoning of property from one classification to another, there must be proof either (1) that there was a mistake in the original zoning, or (2) that the character of the neighborhood has changed to such an extent as to justify reclassification. (Authorities omitted).
In this case Roberts failed to carry the burden which rested upon him to establish that there had been a mistake in the original zoning of the property or that there had been a change in the character of the neighborhood to an extent which would justify or require reclassification. (Emphasis added). (287 So.2d at 437).
In Patterson v. City of Jackson, 285 So.2d 466 (Miss. 1973), it was said:

Petitioner failed to meet the burden which rested upon him of showing that, since the previous order declining to rezone, there had been substantial or significant changes in the character of the neighborhood or in the immediate vicinity which justified a change in classification. (Emphasis added). (285 So.2d at 467).
See also Jitney-Jungle, Inc. v. City of Brookhaven, 311 So.2d 652, 653-654 (Miss. 1975).
In Westminster Presbyterian Church v. City of Jackson, 253 Miss. 495, 176 So.2d 267 (1965), this Court said:
The council was correct in holding that the burden of proof was upon appellant [petitioner praying the rezoning] to allege and prove a material change of circumstances. (Emphasis added). (253 Miss. at 504, 176, So.2d at 271).
*165 This Court said in City of Jackson v. Husbands, 233 So.2d 817, 820 (Miss. 1970), that: "It should be borne in mind that the city council's order is prima facie correct and the presumption is in favor of its reasonableness. (Authorities omitted)." and "We have said over and over again that the burden of proving the need for a change in zoning rests squarely on those property owners requesting the change. (Authorities omitted)" (Emphasis added).
In holding, as the majority does, that there has been a change in the neighborhood or vicinity warranting the rezoning which we would legislate for Pascagoula, the majority engages in a disputation with appellees' positions as reflected in their briefs.
Appellees there assert as true,

The physical condition of the Tapper property has been absolutely unchanged for many years, at least since 1953. (Emphasis added).
and further
The record indicates that the physical condition of the property and its immediate vicinity have remained substantially unchanged from the condition as shown by the photographs and maps presented by Gulf City to the City in considering the adoption of Ordinance No. 11-1976 [challenged in this appeal], since 1953, and probably earlier. From 1953, there has been a 1954, 1968 and 1973 zoning ordinance, two out of three of which zoned the subject property residential. (Emphasis added).
Thus, appellees, although seeking the zoning reclassification, disclaim, or otherwise refrain from asserting, change in the neighborhood as the basis for the rezoning they pray.
Appellants assert res judicata, which, in my opinion, is a complete defense on this record. The majority opinion says that "The easternmost 150 feet of the Tapper property was not the subject of any rezoning request or litigation until the present Petition to Rezone was filed on April 23, 1976." With deference, I disagree.
The property was zoned residential in ordinances adopted in 1939, 1946, 1954, and 1973. The east 100 feet of it was zoned residential in a zoning ordinance adopted in 1968 [9-1968], the west 50 feet of it being zoned industrial in that ordinance. However, on appeal from that ordinance, the Circuit Court of Jackson County, on August 8, 1969, found and adjudged as follows:
The Court further finds that the findings and recommendations of the City Planning Commission of the City of Pascagoula to the City Council [which were rejected by the City Council] as to the zoning of this area are supported by substantial evidence, such findings being that the zoning of the property fronting on the west side of North Cedar Street from a westerly projection of Mill Road north to Krebs Lake should be for a depth of 150 feet and should be zoned Residential 1-A, and that such recommendation is hereby made the judgment of this Court. ... (Emphasis added).
In 1972, the city council again undertook to zone the property as industrial, and, on appeal to the circuit court, it was decided that (1) the Court's action next above was res judicata of all matters before the court in the 1972 appeal, (2) that appellees [city of Pascagoula, Gulf City Fisheries, Inc., et al.] admitted that there was not mistake in the original zoning of the property in controversy; (3) there had not been any material change in circumstances requiring a rezoning thereof, and (4) the record then before the court was conclusive as to these matters.
After the 1969 and 1972 judgments of the Jackson County Circuit Court there is not shown to have been any appeal to this Court. When the property was again zoned as residential in the comprehensive zoning ordinance of 1973 [25-1973] there was no appeal from that zoning.
In Westminster Presbyterian Church v. City of Jackson, supra, this Court said:
We hold that the City Council and the circuit court correctly applied the doctrine of res adjudicata (sic) to the adjudication *166 of past facts, and in zoning cases it is not necessary that any formal plea of res adjudicata (sic) be filed. The Council must apply the doctrine in proper cases. (Emphasis added). (253 Miss. at 504, 176 So.2d at 271).
There is here and in the proceedings to which reference has been made above identity of subject matter within the meaning of authorities on which the majority rely, Standard Oil Co. v. Howell, 360 So.2d 1200 (Miss. 1978), and Murray v. Murray, 358 So.2d 723 (Miss. 1978).
Identity of the subject matter being present, then it seems to me elementary to conclude that any change warranting revision of the zoning of that property must be shown (1) to have taken place, and (2) to have taken place since the adoption of the 1973 ordinance. So far as such showing and within such time-frame is concerned, the record is void of any such proof.
The majority opinion calls attention to the location of a large ditch running diagonally through the Tapper property, with large boats docked in it (in one of the photographic exhibits); vacant land east of Cedar Street and south of the Cowan's residence; marshy land east of Cedar Street, and low elevation of the land, and of it says that it is crystal clear that it cannot be used for anything but industrial property; a sewer line above and on the east side of Cedar Street; since 1964, a seafood processing operation has been carried on south of the property, and there have been a boat repairing business, a marina, and two shipyards, near or on the Tapper property, and the opinion asserts that a house built on the property would have to be erected on eleven foot stilts, and that no residence has ever been built on the flood-hazard lot.
There is no showing in the record which of these are changes, and, if changes, when they were effected, or which of them have been there since the beginning of time. There is nothing in the record that shows that every one of these conditions did not exist in 1973, when the comprehensive zoning ordinance was under consideration nor that each of them was not separately considered by the planning commission and the city council and rejected by them, in classifying this property as residential.
I would reverse the proceedings and dismiss the petition here.
SMITH, P.J., and BROOM, J., join in this dissent.