475 So.2d 153 (1985)
NORTHWEST BUILDERS, INC. and Board of Supervisors of DeSoto County, et al.
v.
Albert MOORE, Kenneth Shifflett and Tom Smith, Exceptors.
No. 54941.
Supreme Court of Mississippi.
August 28, 1985.
John Grisham, Jr., Vaughn & Grisham, Arthur E. Huggins, Southaven, Bill Waller, Sr., Waller & Waller, Jackson, for appellants.
James L. Bonner, Bonner & Birmingham, Olive Branch, for appellees.
Before ROY NOBLE LEE, P.J., and ROBERTSON and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
This case involves a question of rezoning. The appellants, Northwest Builders, Inc., appeal from an order of the Circuit Court of DeSoto County, the Honorable George C. Carlson, Jr., presiding, reversing the decision of the DeSoto County Board of Supervisors [Board] to rezone 5.52 acres from "A" (agricultural) to "R-3" (multi-family residential).
We conclude that the decision of the DeSoto County Board of Supervisors was not arbitrary, capricious, discriminatory or without legal authority. We therefore reverse the trial court and reinstate the order of the Board of Supervisors.
The property in question is located in DeSoto County, one of the fastest growing counties in Mississippi, whose population has doubled since 1960 and is expected to double again before the year 2000. The appellants desire to construct a 48 unit apartment complex in the community of Fairhaven. Counsel for appellees asked *154 the trial court to take judicial notice that the site is "approximately two and one-half miles to three miles south of the Tennessee state line ... [and] people can be in Memphis in 20 minutes."
The three appellees herein reside in College Grove subdivision, which is neither adjacent to nor contiguous to the proposed apartment complex. No appellee lives closer to the property to be rezoned than does Mr. Moore, who is approximately one-half mile away. The three appellees were the only persons who joined in the Bill of Exceptions to the Board's action, filed under Mississippi Code Annotated, Section 11-51-75 (1972).
The application for rezoning was presented, discussed, and debated by proponents and opponents before the DeSoto County Planning Commission at three separate public hearings on September 2, September 30 and December 2, 1982. There were two additional public hearings before the Board of Supervisors on November 3, 1982, and December 8, 1982. Both sides were given ample opportunity to express their views on the rezoning and how it would affect them.
The appellants' proof supporting the rezoning consisted of the following: The complex would be funded by the Farmers Home Administration and there would be no rent subsidies to the occupants. Appellants' engineer, Mr. Lauderdale, stated that there was no "R-3" multi-family residential zoning in the area. Mr. B.J. Page, assistant planning director for DeSoto County, stated that the only vacant "R-3" property in the county was located twenty miles from the subject property and there was a need for "R-3" property in the county. Appellants' consultant Jack Shaw testified that as of September 2, 1982, 100 applications were already on file for the 48-unit complex. Appellants presented petitions signed by 130 area residents supporting the apartment complex. There was testimony from Mr. W.T. Wood as to the lengthy waiting list at other area apartment complexes. A letter from the Mayor of Horn Lake expressed his opinion that DeSoto County has a need for multi-family housing. Various letters from merchants and businessmen were introduced stating that there was a need for the complex. There was further testimony that there was a substantial change in the neighborhood sufficient to justify a rezoning. This change occurred because Highway 78 underwent major construction in the mid-1970's and was converted from a two-lane highway into a major four-lane highway with an entrance and exit ramp less than one mile from the property sought to be rezoned. To the immediate south of the 5.52 acre tract in question is Chateau Ridge Subdivision. This subdivision contains 254 lots, and was rezoned from "A" agricultural to "R-2" residential in April of 1973. To the west is Oakwood Estates Subdivision, containing an undetermined number of lots. Oakwood Estates was rezoned in October 1980 to allow residential construction on 1 1/2 acre lots. To the southwest is College Grove Subdivision, containing 38 three acre lots. This subdivision was rezoned in December 1974 to permit residential construction on such lots. Moreover, the entire vicinity is considered a high-growth area under the comprehensive growth planned for DeSoto County.
The appellees' arguments against the rezoning are as follows: Appellees presented a petition from certain residents of Fairhaven opposed to the rezoning. They introduced a letter from the Mayor of Olive Branch stating that her city can more than adequately meet the needs for this type housing. There was an affidavit from the Chief of Police of Olive Branch stating that ninety percent of all disturbance calls in Olive Branch originate at one of the apartment complexes there. They alleged that the DeSoto County Sheriff's department was ill-equipped to provide the necessary police protection at the proposed site, and that fire and other public services were inadequate.
One appellee stated that he "bought there because of the rural area; and that he would like to keep it that way."
*155 On December 8, 1982, the Board of Supervisors made the following findings in its written order:
WHEREAS, the public hearing was continued on this date at which time the application was amended by the applicant requesting rezoning of 5.52 acres instead of 11.75 acres, and the Board of Supervisors after having heard from proponents and opponents does hereby find that the evidence presented clearly indicates material changes in the character of the area proposed to be rezoned; such changes being the result of developments in that area which have occurred since the adoption of the DeSoto County Comprehensive Plan and Zoning Ordinance in 1969 and evidence further showed a public need for multi-family housing.
THEREFORE, IT IS HEREBY ORDERED:
That the application of Kim Kreunen to rezone 5.52 acres from "A" Agricultural to "R-3" Multi-Family Residential located at the north end of Chatelet Drive in Section 11, Township 2, Range 6 West, as shown on the attached plat is hereby approved.
* * * * * *
ORDERED AND DONE, this the 8th day of December 1982.
Thereafter, on April 12, 1983, the circuit court reversed the Board stating:
The court is bound to find as a matter of law that the action of the Board in applying the rezoning application was arbitrary, capricious and discriminatory.
We have consistently held that decisions of zoning authorities are legislative decisions and are therefore presumed to be valid. Currie v. Ryan, 243 So.2d 48 (Miss. 1970). In our most recent zoning case, Mayor and Commissioners of the City of Jackson v. Wheatley Place Inc., 468 So.2d 81 (Miss. 1985), we made it clear that:
In our appellate review of the reasonableness and propriety of zoning ordinances, we have developed some basic rules over the past quarter century. We began by stating in Ballard v. Smith, 107 So.2d 580, 234 Miss. 531 (1959), that courts should not constitute themselves zoning boards. We have amplified this statement with the observation that the classification of property for zoning purposes is essentially a legislative rather than a judicial responsibility of the city board, and in the absence of its being arbitrary, unreasonable, discriminatory, confiscatory, or an abuse of discretion courts would not interfere; and courts would set aside only if the invalidity was clear. See: Adams v. Reed, 239 Miss. 437, 123 So.2d 606 (1960); Robinson Industries v. City of Pearl, 335 So.2d 892 (Miss. 1976); City of Jackson v. Ridgway, 261 So.2d 458 (Miss. 1972); Jackson v. Schwartz, 244 So.2d 8 (Miss. 1970); Currie v. Ryan, 243 So.2d 48 (Miss. 1970); Moore v. Madison County Bd. of Supervisors, 227 So.2d 862 (Miss. 1969); Howie v. Autrey, 209 So.2d 904 (Miss. 1968). (468 So.2d at 83).
We emphasized this further in Board of Aldermen of Town of Bay Springs v. Jenkins, 423 So.2d 1323 (Miss. 1982), when Justice Hawkins described the role of the chosen representatives of the people:
In rendering the municipal order, the Mayor and Board of Aldermen were authorized to consider the statements expressed by all the landowners at the hearing, as well as to call upon their own common knowledge and experience in their town. It is manifest that the Mayor and Board took into consideration all statements, both sworn and unsworn, and their common knowledge and familiarity about their small community, in reaching their decision. We believe this method to be sound and practical, and courts should respect such findings unless they are arbitrary, capricious and unreasonable. (423 So.2d at 1327-1328). (Emphasis added).
A basic requirement in an application for rezoning is that the applicant must prove either: "(1) that there was a mistake in the original zoning, or; (2) that the character of the neighborhood has changed to such an extent as to justify rezoning and *156 that public need exists for rezoning." See City of Jackson v. Wheatley Place, Inc., supra; City of Oxford v. Inman, 405 So.2d 111 (Miss. 1981); Cloverleaf Mall, Ltd. v. Conerly, 387 So.2d 736 (Miss. 1980); Watts v. City of Wiggins, 376 So.2d 1072 (Miss. 1979); and Jitney Jungle, Inc. v. City of Brookhaven, 311 So.2d 652 (Miss. 1975). Here it is uncontested that there was no mistake in the original zoning. Therefore, the question now becomes, whether the character of the neighborhood has changed, and whether there is a public need for rezoning.
Unquestionably, there was sufficient evidence before the Board to support their finding that there was both a change in the neighborhood since the inception of the comprehensive zoning plan and that there was a public need for rezoning. The appellees, in attacking the zoning ordinance, had the burden of affirmatively showing that the ordinance was arbitrary, capricious, discriminatory or illegal. A review of the record indicates that they did not meet this burden.
After thoughtful consideration, we hold that the actions of the Board were not unreasonable, arbitrary, capricious or discriminatory, and this property should be rezoned from "A" to "R-3."
REVERSED AND RENDERED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.